J-S01036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD SCOTT LENHART | : | |
| | : | |
| Appellant | : | No. 1070 MDA 2017 |

Appeal from the Judgment of Sentence February 4, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s):  CP-14-CR-0001771-2014

BEFORE:  GANTMAN, P.J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED APRIL 06, 2018**

Appellant, Richard Scott Lenhart, appeals *nunc pro tunc* from the judgment of sentence entered in the Centre County Court of Common Pleas, following his *nolo contendere* plea to two counts each of indecent assault and insurance fraud.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Over the course of seventeen years, Appellant, a practicing psychologist, engaged in sexual behavior with two of his patients under the guise that the sexual contact was legitimate psychotherapeutic treatment.  Appellant routinely billed insurance for these sessions.

On May 19, 2015, Appellant entered a *nolo contendere* plea to two

_____

[1] 18 Pa.C.S.A. §§ 3126(a)(1), 4117(a)(2), respectively.

counts each of indecent assault and insurance fraud. On February 4, 2016, with the benefit of a pre-sentence investigation report ("PSI"), the court ordered Appellant to pay restitution to the insurance company in the amount of $71,557.00, and sentenced him to an aggregate term of three (3) to six (6) years' incarceration. The court also adjudicated Appellant a Tier III sex offender and a sexually violent predator ("SVP") under the Sex Offender Registration and Notification Act ("SORNA") in effect at that time.[2] On Monday, March 7, 2016, Appellant timely filed a notice of appeal. While the appeal was pending, Appellant filed a *pro se* petition pursuant to the Post-Conviction Relief Act ("PCRA")[3] on April 4, 2016, which the court dismissed as premature on April 7, 2016. On August 11, 2016, this Court dismissed Appellant's appeal for failure to file a brief.

Appellant filed a timely PCRA petition on March 9, 2017, which sought to reinstate his post-sentence motion and direct appeal rights *nunc pro tunc*. The PCRA court held a hearing on June 1, 2017. The following day, the PCRA granted relief and reinstated Appellant's post-sentence motion and direct appeal rights *nunc pro tunc*. Appellant timely filed a post-sentence

---

[2] SORNA, at 42 Pa.C.S.A. §§ 9799.10-9799.41, went into effect on December 20, 2012, **after** the commission of Appellant's sex offenses against his patients, which occurred up to November 2011. SORNA replaced Megan's Law as the statute governing the registration and supervision of sex offenders. SORNA was recently amended by H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018.

[3] 42 Pa.C.S.A. §§ 9541-9546.

motion on June 8, 2017. On July 3, 2017, the court held a hearing, granted the motion in part, and denied it in part. The court vacated Appellant's SVP designation to allow Appellant to hire an expert to challenge SVP status; the court stayed SVP proceedings until after the present appeal is resolved.[4] Appellant timely filed a notice of appeal on July 6, 2017. The next day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on July 17, 2017.

Appellant raises the following issue for our review:

> DID THE SENTENCING COURT ABUSE ITS DISCRETION IN IMPOSING MINIMUM SENTENCES WITHIN AND ABOVE THE AGGRAVATED RANGE OF THE SENTENCING GUIDELINES WHERE THE RECORD DID NOT SUPPORT AGGRAVATING CIRCUMSTANCES OR REASONS TO DEPART FROM THE GUIDELINES[?]

(Appellant's Brief at 5).

Appellant argues he had no prior record and cannot abuse his position of authority as a psychologist anymore, due to the revocation of his license and his conviction for a registerable offense. Yet, the court sentenced

---

[4] If the court chooses to carry out further SVP proceedings in this case, it must first consider the new law decided during the pendency of Appellant's appeal. *See, e.g., **Commonwealth v. Muniz***, ___ Pa. ___, 164 A.3d 1189 (2017) and ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa.Super. 2017). Likewise, the court must be cognizant of which version of Megan's Law applies to Appellant. Appellant shall also have the opportunity to raise, develop, argue, and preserve any constitutional challenges he might have to the SVP process and to his registration/reporting requirements as a sex offender.

Appellant to an aggregate sentence of three to six years' incarceration, including consecutive, aggravated range or above the aggravated range sentences, which were unsupported by legitimate factors, the court's reasons, or the record. Appellant complains the number of counts charged against him adequately addressed the number of victims, and their vulnerability was sufficiently addressed in the acknowledgment that the offensive conduct was nonconsensual. Appellant submits his commission of these offenses while he also committed insurance fraud was adequately addressed by the consecutive nature of the sentences imposed. Appellant concedes the possibility of consecutive sentences, based on the number of counts he pled guilty to, but he insists the court cannot then use the same factors (number of victims or insurance remuneration) to justify any departure from the standard sentencing guidelines. Appellant concludes the sentence imposed was excessive, violates the Sentencing Code and sentencing norms, and raises a substantial sentencing question. As presented, Appellant challenges the discretionary aspects of sentencing. *See Commonwealth v. Anderson*, 830 A.2d 1013 (Pa.Super. 2003) (stating claim that court considered "improper factors" at sentencing refers to discretionary aspects of sentencing); *Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive refers to discretionary aspects of sentencing); *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa.Super. 1995), *appeal denied*, 544 Pa.

653, 676 A.2d 1195 (1996) (stating claim that sentencing court failed to consider or did not adequately consider certain factors refers to discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's

- 5 -

evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *appeal denied*, 600 Pa. 745, 964 a.2d 895 (2009), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (quoting *Commonwealth v. Williams*, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*)) (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912-13. When considering whether an appellant has raised a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247 (Pa.Super. 2006). Rather, the appellant must articulate how the sentencing court's actions violated the sentencing code. *Id.*

"Generally, Pennsylvania law 'affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question.'" *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011)

(quoting **Commonwealth v. Pass**, 914 A.2d 442, 446-47 (Pa.Super. 2006)). A basic "allegation that a sentencing court failed to consider or did not adequately consider certain factors does not raise a substantial question that the sentence was inappropriate." **Cruz-Centeno, supra** at 545. **See also Commonwealth v. Foust**, 2018 WL 988904, at **\*13** (filed February 21, 2018) (regarding mere challenge to imposition of concurrent versus consecutive sentences, "extensive case law in this jurisdiction holds that defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence").

On the other hand, an appellant raises a substantial question when he alleges the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances. **Commonwealth v. Felmlee**, 828 A.2d 1105 (Pa.Super. 2003) (*en banc*). Also, "claims that a penalty is excessive and/or disproportionate to the offense can raise substantial questions." **Malovich, supra** at 1253. Likewise, a substantial question exists when a defendant alleges the sentencing court considered impermissible factors when imposing an aggravated range sentence. **Commonwealth v. Stewart**, 867 A.2d 589, 592 (Pa.Super. 2005). An allegation that the sentencing court provided inadequate reasons on the record for imposing a sentence above the standard range also constitutes a substantial question. **Commonwealth v. Goggins**, 748 A.2d 721, 727 (Pa.Super. 2000) (*en banc*), *appeal denied*,

563 Pa. 672, 759 A.2d 920 (2000).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant [and], of course, the court must consider the sentencing guidelines." *Commonwealth v. Fullin*, 892 A.2d 843, 847-48 (Pa.Super. 2006). A sentencing court may consider any legal factor in imposing an aggravated range sentence. *Commonwealth v. Bowen*, 975 A.2d 1120, 1122 (Pa.Super. 2009). One legal factor is evidence of uncharged criminal conduct. *See Commonwealth v. P.L.S.*, 894 A.2d 120, 131 (Pa.Super. 2006), *appeal denied*, 588 Pa. 780, 906 A.2d 542 (2006). Provided there is an appropriate evidentiary link between the uncharged conduct and the defendant, the court may consider the conduct as relevant to the "protection of the public" sentencing factor. *See id. See also* 204 Pa.Code § 303.5(d) (stating sentencing court may consider "previous convictions, juvenile adjudications or dispositions not counted in the calculation of the Prior Record Score, **in addition to other factors deemed appropriate by the court**") (emphasis added). The "court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *appeal denied*, 582 Pa. 671, 868 A.2d 1198 (2005), *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005).

Our standard of review concerning the discretionary aspects of sentencing states:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa.Super. 2005), *appeal denied*, 586 Pa. 723, 890 A.2d 1057 (2005). "[U]nder the Sentencing Code an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is 'unreasonable.'" *Commonwealth v. Walls*, 592 Pa. 557, 568, 926 A.2d 957, 963 (2007). In making this "unreasonableness" inquiry, this Court must consider four factors:

**§ 9781. Appellate review of sentence**

* * *

**(d) Review of record.—**In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d)(1)-(4). Our Supreme Court explained, "the concept of unreasonableness" is "inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition." ***Walls, supra*** at 568, 926 A.2d at 963.

Where the sentencing court had the benefit of a PSI, we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Devers***, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988). ***See also Commonwealth v. Tirado***, 870 A.2d 362, 368 (Pa.Super. 2005) (stating if sentencing court has benefit of PSI, then we can expect that court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors).

Instantly, Appellant preserved his sentencing claims in his post-sentence motion and generally in his Rule 1925(b) statement. He also included a Rule 2119(f) statement in his brief that articulated his claims regarding the court's application of the sentencing guidelines, the court's use of "improper factors," and the adequacy of the court's reasons for the sentence imposed. We agree with the Commonwealth that Appellant has raised substantial sentencing questions.

Nevertheless, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable

Jonathan D. Grine, we conclude the record belies Appellant claims, which in turn merit no relief. The trial court opinion comprehensively discusses and properly disposes of the complaints raised. (**See** Trial Court Opinion, filed August 4, 2017, at 2-7) (finding: at sentencing, court stated it imposed sentence, based on consideration of minimum amount of confinement consistent with public protection, gravity of offenses, and rehabilitative needs of Appellant; court reviewed PSI and letters submitted on behalf of Appellant; court also considered circumstances of particular offenses, Appellant's character and education, and sentencing guidelines; Appellant abandoned all professional ethics when he engaged in sex acts with his highly vulnerable patients for seventeen years, failed to stop on his own, and isolated himself from other professionals and support people who warned him to stop; Appellant was unable to accept that his conduct was wrong; court considered Victim N.M.'s impact statement and Victim A.M.'s allegations; court explained on record it imposed sentences outside standard range on both indecent assault charges, in light of Appellant's monstrous offenses against his victims, whom he exploited and intimidated mentally and physically over long periods of time for Appellant's own sexual gratification, and court's belief Appellant is poor candidate for rehabilitation; court explained on record it imposed aggravated range sentences for insurance fraud offenses because Appellant systematically sought and received financial gain from his victimization of his patients; court properly

fashioned aggregate sentence for Appellant under these circumstances). We agree. Here, the sentencing court considered the particularly heinous specifics of the offenses, which Appellant perpetrated for many years while he occupied a position of trust, as well as his character and lack of remorse. We cannot fault the manner in which the court did so in this case. Therefore, we refuse to supplant the court's discretion on the grounds alleged. ***See Griffin, supra***. ***See also Walls, supra***. Accordingly we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2018

Ditka ·
Crowley

# IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,          )
                                                )

        v.          )          CP-14-CR-1771-2014

                                                )

RICHARD S. LENHART,          )
        Defendant.          )

*Attorney for Commonwealth:*          *Laura A. Ditka, Esquire*
*Attorney for Defendant:*          *David Crowley, Esquire*

## OPINION IN RESPONSE TO MATTERS COMPLAINED OF ON APPEAL

Presently before the Court is an appeal filed by Richard S. Lenhart ("Appellant"). Appellant's Concise Statement of Matters Complained of on Appeal contains three (3) issues:

1. The Trial Court erred in imposing minimum sentences within and above the aggravated range of the sentencing guidelines as the record did not support aggravating circumstance or reasons to depart from the guidelines.

2. The Trial court erred in imposing restitution amount not adequately supported by the record.

3. The Trial Court erred in imposing a fine in addition to costs and substantial amounts of restitution when the record established that defendant was destitute and incapable of earning a livelihood.

The Court disagrees with Appellant's Statement for the reasons set forth below.

## BACKGROUND

Appellant pled nolo contendere to four counts, two counts of indecent assaults and two counts of insurance fraud. Written Nolo Contendere Plea Colloquy, ¶5. Both counts of indecent assault stem from numerous interactions he had as a treating psychologist with two patients. Both counts of insurance

1

☒O  ☐RD  ☐S

64

fraud arise from Appellant submitting insurance claims for professional quality psychotherapy treatment when the Appellant was actually engaged in inappropriate psychotherapy treatment with the patients including holding, touching, sexual contact, sexual acts, and sexualized behavior. Restitution was sought and awarded for Counts 3 and 9, insurance fraud, for $27,012 and $44,545 respectively.

## DISCUSSION

### I. Length of Sentences

In fashioning a sentence, the trial court must impose a term of confinement consistent with the protection of the public, the gravity of the offense as it relates to the impact of the victim and to the community, and the rehabilitative needs of the defendant. *Com v. Begley*, 780 A.2d 605, 642-643 (Pa. 2001). Sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion. *Com v. Miller*, 835 A.2d 377, 380 (Pa. Super. 2003) (citing *Com. v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001)). When a sentence deviates from the guidelines, the court is required to provide a contemporaneous written statement of its reasons for doing so. See *Com. v. Ritchey*, 779 A.2d 1183, 1186 (Pa. Super. 2001). This requirement is satisfied when the court states its reasons for the sentence on the record and in the defendant's presence. *Id.* at 1186, 1887 (citing *Com. v. Smith*, 534 A.2d 836, 838 (Pa. Super. 1987)). Courts must apply the guidelines unless the circumstances of the individual case require deviation, and in that situation where deviation is required the court must articulate sufficient reasons to justify this conclusion. *Com v. Eby*, 784 A.2d 204, 209 (Pa. Super. 2001) As long as the trial court's reasons demonstrate that it weighed the Sentencing Guidelines with the facts of the crime and the defendant's character in a meaningful fashion, the court's sentence should not be disturbed. *Begley*, 780 A.2d at 643. When imposing sentence, a court is required to consider "the particular circumstances of the offense and the character of the defendant. *Com. v. Munson*, 615 A.2d 343, 345 (Pa. Super 1992) (quoting *Com. v. Frazier*, 500 A.2d 158, 159 (Pa. Super

2

1985). When a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence. *Com v. Baker*, 72 A.3d 652, 663 (Pa. Super. 2013).

The Court stated the sentence would be imposed based on minimum amount of confinement consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. Sentencing Tr. 38:14-18. The Court also stated it reviewed the Pre-Sentence Investigation Report and letters submitted on behalf of Appellant. *Id*. 38:19-24. The Court heard and considered statements from both counsels and from one of the victims. *Id*. 38:24-39:1. Finally, the Court considered the circumstances of the offenses, the defendant's character, defendant's education, and the guidelines and sentencing codes.

Prior to sentencing , the Court reviewed the Pre-Sentencing Investigation Report which included the assessment by the Sexual Offenders Assessment Board, the Police Criminal Complaint, and several character letters supporting Appellant. Counsel for the Commonwealth called Corrine Scheumeman, a board member with the Pennsylvania Sexual Offender Assessment Board, as an expert witness to discuss the findings of the Sexual Offenders Assesment Board. *Id.* 10:22-14:23. During Ms. Scheumeman's testimony she discussed facts that were relevant for the Court's decision in imposing sentences within and above the aggravated range of the sentencing guidelines. First, Appellant's behavior demonstrates a mental abnormality, paraphilic disorder unspecified. *Id*. 16:11-24. This means that the individual experiences intense recurrent sexually arousing fantasies, urges, or behaviors regarding a particular target; that the engagement of those behaviors causes a significant impair to the individual in at least one important domain of life, and that the individual is at least 18 years old. Sentencing Tr. 38:19-24. Further, Appellant's victims were his own patients that he was treating as a licensed psychologist. *Id*. 17:19-18:2. Appellant's victims, as patients seeking psychotherapy treatment,

3

☒O  ☐RD  ☐S

were at the top scale of vulnerability. *Id.* 18:3-22. Appellant abandoned clear professional ethics by sexually engaging with his clients. *Id.* 18:22-19:9. Appellant engaged in this conduct for 17 years and not only failed to stop on his own after reflection of his harmful and unethical behavior, but also isolated himself from other professionals and support people who told him he needed to stop. *Id.* 19:20-20:16. Ms. Scheumeman testified that Appellant was unable to accept that sexually abusing his own patients was morally, ethically, and professionally wrong despite teaching psychology and ethics courses. Sentencing Tr., 20:17-23:8. Ms. Scheumeman's opinion was that Appellant's behavior suggested he was more likely to offend in the future since he was unwilling to recognize the wrongfulness of his behavior. *Id.* 22:10-23:8. Further, Appellant's paraphilic behavior may wax and wane over the course of his lifetime, but once it is acquired, a paraphilic disorder is a lifetime disorder. Sexual Offenders Assessment Board Report, page 8.

The Court also considered the testimony given by one of Appellant's victims, N.M., regarding how Appellant's sexual abuse impacted her. N.M. stated she became Appellant's patient in order to seek help recovering from childhood sexual abuse. Victim Impact Statement, (herein "Vic. Imp. St."), 2:23-25. As part of the treatment to find a way to emotional well-being, N.M. confided in and trusted Appellent to handle her confidences with care, competence and respect. *Id.* 2:25-3:4. N.M. also testified that Appellant held himself out as a pastor at a local church. *Id.* 3:20-21. This means that Appellant held himself out as another type of person whom the victim should have been able to trust not to abuse her. N.M. stated the Appellant used her faith and vulnerability to continue an avenue of exploitation in order to imprison her emotionally for nearly two decades. *Id.* 4:3-12. Further Appellant utilized N.M.'s desperate desire to heal from her childhood sexual abuse and lead a healthy life. Vic. Imp. St. at 4:14-18. Appellant told N.M. that sexual contact with him was likely her last hope and only bridge to healing and to have healthy relationships. *Id.* 4:19-21. Appellant perpetuated the cycle of abuse, asked N.M. to lie

4

☒O ☐RD ☐S

about the abuse, and flew into rages in order to intimidate and control her. *Id.* 5:1-12. N.M.clearly stated Appellant used the agony of N.M.'s childhood abuse along with the terror of being abandoned to deliberately manipulate, dominate, violate, humiliate, and to use N.M.. *Id.* 5:18-6:4. Due to Appellant's incompetence, arrogance, lack of insight, and abuse for seventeen years, N.M. lost the ability to seek competent care and had to seek further therapy not only for her childhood traumas but also for Appellant's abuse. *Id.* 6:19-7:6. N.M. continues to struggle with the effects of Appellant's abuse including suffering from sleepless nights. Vic. Imp. St. at 7:7-14. When determining the sentence, the Court carefully considered the ongoing effects of Appellant's abuse along with the impact of the abuse on the victim at the time it occurred.

It is also important to examine the allegations made by the other victim, AM, in this case. AM was a patient of Appellant from June 23, 2003 until March 1 2010. Police Criminal Compl., (herein "Pol. Crim. Compl.") at 8. After six months Appellant started "touching" therapy. *Id.* This "touching" therapy progressed to hugging, kissing, removal of clothing, and body to body contact. *Id.* at 9. Appellant would have AM grind against his erect penis. *Id.* Appellant would have AM give him massages during sessions. *Id.* After AM was sexually assaulted by someone else, Appellant had AM remove her jeans and proceeded to touched her genitals to provide a "safe healing touch". Pol. Crim. Compl. at 9. All of this occurred during her psychotherapy sessions, which Appellant billed AM's insurance company, Highmark.

After hearing the testimony of Ms. Scheumeman and N.M., the Court pronounced its sentence of 1 to 2 years for each count of indecent assault and 6 to 12 months for each count of insurance fraud. Sentencing Tr. 40:4-10; 41:8-9; 42:11-15. The Court explained that it had gone outside the range on both indecent assault charges because

5

☒O ☐RD ☐S

"Defendant's action involved multiple victims. These victims who were seeking professional and therapeutic help from the defendant who exploited both these victims mentally and physically for long periods of time for the defendant's own sexual urges. Defendant made no attempt to stop his behavior. Defendant took victims who had been victimized and re-victimized for many years. And the Court finds that the defendant would be a poor candidate for rehabilitation."

Sentencing Tr. 41:13-42:1. The fact that Appellant's actions involved multiple victims is evident in the Police Criminal Complaint which outlines the different actions Appellant took toward each victim individually. Pol. Crim. Compl. at 8-11. It was also evident that the victims were Appellant's patients seeking psychotherapy treatment. *Id.* It is also evident from the record that Appellant exploited his own patients mentally and physically for years. *Id*; Vic. Imp. St. 5:18-6:4. Counsel for the Commonwealth also presented evidence that Appellant engaged in this conduct for 17 years and not only failed to stop on his own, but instead isolated himself from other professionals and support people who told him he needed to stop. Sentencing Tr. 19:20-20:16. As stated above, the Appellant was supposed to be treating N.M. for childhood sexual abuse and instead used his knowledge of those various abuses in order to abuse her. Vic. Imp. St. 2:23-25; 5:18-6:4. Ms. Scheumeman testified that Appellant's behavior suggested he was more likely to offend in the future since he was unwilling to recognize the wrongfulness of his behavior. Sentencing Tr. 22:10-23:8. The Pre-Sentencing report also indicated that Appellant was likely to reoffend due to the nature of his paraphilic disorder. Sexual Offenders Assessment Board Report, page 8. The testimony and evidence supports the Court's finding that defendant would be a poor candidate for rehabilitation. The record clearly supported a finding of aggravated circumstances justifying the Court's sentences regarding the indecent assault counts.

The Court opined that the sentences for the insurance fraud counts should be in the aggravated range since the defendant was financially compensated for his victimization of his patients. *Id.* 42:5-10. To reiterate the Court's sentencing opinion, the Appellant billed an insurance company for proper and

6

☒O ☐RD ☐S

professional psychotherapy treatments when instead he was sexually abusing his patients for years. N.M. stated Appellant used her past childhood sexual abuse and her desire to heal as a tool to deliberately manipulate, dominate, violate, humiliate, and to use her. Vic. Imp. St. at 5:18-6:4. Ms. Scheumeman testified that Appellant's actions were morally, ethically, and professionally not acceptable. Sentencing Tr. at 20:17-23:8. Appellant was billing an insurance company for services for years that not only did not meet professional standards but also sexually traumatized patients he had a duty to aid as a health care professional. Consistent with the protection of the public, the gravity of the offense as it relates to the impact of the victim and to the community, and the rehabilitative needs of the defendant, this Court found and continues to opine that an aggravated range for the counts of insurance fraud was just and within the Court's discretion.

## II. Restitution

The second matter that the Appellant complains of on appeal is that this Court erred in imposing restitution amounts not adequately supported by the record. Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor. 18 Pa.C.S.A. §1106(a). It is clear under § 1106(c) of the Crimes Code that a sentencing court **must** order restitution to the full extent of the victim's loss, regardless of the defendant's ability to pay. *Com. v. Colon*, 708 A.2d 1279, 1282 (Pa. Super. 1998) (emphasis added). An order of restitution is a sentence, and thus, the amount awarded is within the sound discretion of the trial court and must be supported by the record. *Com v. Boone*, 862 A.2d 639, 643 (Pa. Super. 2004). Restitution may be imposed only for those crimes to property or person where the victim suffered a loss

7

☒O ☐RD ☐S

that flows from the conduct that forms the basis of the crime for which the defendant is convicted. *Id.* (citing *Com. v. Dohner*, 725 A.2d 822, 824 (Pa. Super. 1999).

The Police Criminal Complaint outlines the billing for treatments for each victim. Pol. Crim. Compl. at 13. For the first victim, Appellant billed Highmark for a total of 318 times for "treatment sessions" ranging from January 3, 2008 to March 1, 2010. *Id.* During that time, the total amount paid by Highmark to Appellant for "sessions" with victim one was $27,012.00. *Id.* Victim one was a patient from June 23, 2003 to March 1, 2010. *Id.* at 8.The Police Criminal Complaint also states that inappropriate "holding" sessions started about six months after he commence treatment. *Id.* This means Appellant began using inappropriate psychotherapy treatments on or about December 23, 2003. This Court found that it must order restitution to the full extent of the Highmark's loss, $27,012.00, since these payments were made for proper psychotherapy treatments and the Appellants' actions were clearly inappropriate and did not constitute professionally approved psychotherapy.

Appellant billed Highmark a total of 360 times for "treatment sessions" with victim two from January 4, 2008 to November 4, 2011. Pol. Crim. Compl. at 13. During this time, the total amount paid by Highmark to Appellant for "sessions" with victim two was $44,545.00. *Id.* Victim two was a patient from July 9, 1994 to November 4, 2011. *Id.* at 10. The Police Criminal Complaint also states that in the last eight to nine years of sessions, Appellant progressed from a "holding therapy" to sexual contact with victim. *Id.* This means Appellant was engaging in sexual contact with his patient, an inappropriate form of psychotherapy, from sometime between November 4, 2002 and November 4, 2003 to November 4, 2011. The requested restitution is for a period clearly within the time frame when Appellant began using inappropriate psychotherapy treatments while billing Highmark for appropriate and professionally acceptable treatments. This Court found that it must order restitution to the full extent of Highmark's loss, $44,545.00, since these payments represented insurance company's actual loss due to Appellant

☒O   ☐RD   ☐S

wrongfully billing for proper treatments. Furthermore, all of this information was clearly part of the record when the Court made its decision concerning restitution as it was part of the Police Criminal Complaint which itself was included in the Pre-Sentence Investigation report.

## III. Amount of Fines

The final matter complained on appeal is whether this Court erred in imposing a fine in addition to costs and substantial amounts of restitution when the record established that defendant was destitute and incapable of earning a livelihood. In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose. 42 Pa. C.S.A. §9726(d). The court shall not sentence a defendant to pay a fine unless it appears of record that: (1) the defendant is or **will** be able to pay the fine and the fine will not prevent the defendant from making restitution or reparation to the victim of the crime. 42 Pa. C.S.A. §9726(c) (emphasis added). Imposition of a fine is not precluded merely because the defendant cannot pay the fine immediately or because he cannot do so without difficulty. *Com. v. Thomas*, 879 A.2d 246, 264 (Pa. Super. 2005).

Appellant's indigence at the time of sentencing is not the only factor when considering the imposition of a fine. It is true that the court shall take into account the financial resources of a defendant and the nature of the burden that its payment will impose. 42 Pa. C.S.A. §9726(d). The Court recognizes that for someone in the Appellant's current financial situation, the amount of restitution and fines in this case might seem overwhelming. However, the Appellant is a highly educated individual with decades of professional experience and connections. While Appellant likely will never again work as a licensed psychologist there is no evidence before this Court to suggest Appellant is incapable of earning a living and will not be able to find gainful employment in the future. Just because the Appellant cannot pay at

9

☒O  ☐RD  ☐S

the time of sentencing does not preclude the imposition of a fine. *See Thomas*, 879 A.2d at 264.

Therefore, this Court found that the imposition of a fine was proper as established on the record.

For the reasons discussed above, the Court respectfully requests that its decision remain undisturbed.

BY THE COURT:

Date: 8/4/17

_____
Jonathan D. Grine, Judge

10

☒O ☐RD ☐S